James **BALDWIN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–83–00202–CR.

Court of Appeals of Texas, El Paso.

Sept. 21, 1983.

George Scharmen, San Antonio, for appellant.

Edward Shaughnessy, III, San Antonio, for appellee.

Before PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

James Baldwin was convicted by a jury of forgery by passing, and the court assessed his punishment at ten years confinement. We affirm as to the finding on guilt, but reverse for resentencing.

The Appellant presented a check made payable to him and drawn on Robert Benton, for payment at the Government Employees Credit Union in San Antonio. The cashier, who knew Robert Benton, believed the check to be a forgery and called the police. Baldwin was arrested at the credit union office. He testified that he had received the check for some equipment he sold, and his defense was that he had no

knowledge the check, which was made out to him, was a forgery. After he was released from jail, he learned that the person who gave him the check was Leon Sutton and not Robert Benton. Appellant had a bench warrant issued, and Sutton was returned from the Department of Corrections to be a witness in this trial. Initially, Sutton invoked his Fifth Amendment privilege and refused to testify. But, three days into the trial he changed his mind and testified as a rebuttal witness for the State.

By his first ground of error, Appellant contends the trial court erred in refusing to permit one of his witnesses the right to testify so as to impeach Leon Sutton. The witness, Christopher Weixel, who is an attorney but was not an attorney of record in this case, was in the courtroom and heard Sutton testify. At the beginning of the trial, the Appellant invoked the rule as provided for in Article 36.03, Tex.Code Crim.Pro.Ann. (Vernon 1981). When Mr. Weixel was called as a witness to testify as to what Sutton had said earlier in an interview about various check transactions, the State objected and he was not allowed to testify since he had remained in the courtroom after the rule was invoked. Enforcement of the rule lies within the sound discretion of the trial judge. *Mitchell v. State,* 608 S.W.2d 226 (Tex.Cr.App.1980). There must be a clear abuse of discretion to constitute reversible error. *Owens v. State,* 503 S.W.2d 271 (Tex.Cr.App.1974). Appellant urges that because Mr. Weixel was an attorney and an officer of the court, it was an abuse of discretion to refuse to allow him to testify. See: *Corbett v. State,* 493 S.W.2d 940 (Tex.Cr.App.1973) and *Boatmeyer v. State,* 31 Tex.Cr.R. 473, 20 S.W. 1102 (1893). But, in those cases the exception to the rule was made for one who was an attorney of record in the case and not one who was just a spectator in the courtroom. We find no abuse of discretion. With regard to the claim the trial court erred in denying Appellant the opportunity to reopen the case and present a tape recording of the conversation with Sutton, no offer of proof was made for appellate purposes and no error is shown. Article 40.09, subd. 6(d)(1), Tex.Code Crim.Pro.Ann. (Vernon 1979). Ground of Error No. One is overruled.

Appellant next contends the evidence is insufficient to support the finding that he was guilty of forgery by passing. Under the indicted offense, the State was required to prove that the Appellant passed the check, purportedly made by Robert Benton, knowing that it had not been so made, with intent to harm or defraud. *Jones v. State,* 545 S.W.2d 771 (Tex.Cr.App. 1977). While the evidence was conflicting, viewed in a light most favorable to the verdict it was sufficient to support the jury's verdict. Robert Benton testified that the check was from a book of blank checks stolen from his automobile on August 17, 1980. He did not sign the check and did not know the Appellant. The cashier at the credit union unequivocally identified Appellant as having presented three different checks purportedly signed by Robert Benton, for payment on two different dates. The first two checks were presented on August 18, but neither check was cashed. When the third check was presented on August 23, the cashier called the police and Baldwin was arrested. Leon Sutton testified that he and the Appellant had been acquainted with each other for a number of years and that Appellant told him in August that he had stolen some blank checks from an automobile where he worked. The evidence was sufficient for the jury to conclude that Appellant knew that the check which he presented for payment on August 23, 1980, was forged, and it was not necessary for the State to show that Baldwin himself forged Benton's name as maker of the check. Ground of Error No. Two is overruled.

The Appellant asserts in his last ground of error that the trial court erred in allowing the prosecutor the right to cross-examine Appellant on specific acts of prior misconduct. Baldwin testified in his own defense and acknowledged that he had been convicted of the misdemeanor offense of theft and received probation. He acknowl-

edged that the offense involved checks which he had written and that he was required to pay $81.00 per month as restitution. On cross-examination, he acknowledged that the total restitution due was $8,100.00. An objection was made when the prosecutor asked how many bad checks he passed during that transaction, or series of transactions. The objection was overruled, and Baldwin testified that he had written forty to forty-five bad checks.

■ Generally, proof of an extraneous offense is inadmissible because an accused is entitled to be tried for the offense charged and not some collateral crime or for being a criminal generally. *Chambers v. State,* 601 S.W.2d 360 (Tex.Cr.App.1980); *Russell v. State,* 598 S.W.2d 238 (Tex.Cr. App.1980). Moreover, evidence of an extraneous offense is not and may not be admitted as evidence of the accused's guilt for the offense charged because the accused's propensity to commit crimes is not material to whether he is guilty of the specific offense for which he is on trial. *Elder v. State,* 614 S.W.2d 136 (Tex.Cr.App.1981); *Sanders v. State,* 604 S.W.2d 108 (Tex.Cr. App.1980).

■ The prior conviction was not remote and did involve moral turpitude. Hence, it was admissible for impeachment despite its misdemeanor classification. *Taylor v. State,* 612 S.W.2d 566 (Tex.Cr. App.1981); *Poore v. State,* 524 S.W.2d 294 (Tex.Cr.App.1975). The evidence as to the plea of guilty, the sentence and the requirement of restitution was developed during the direct examination of Baldwin. When on cross-examination he was asked the amount of the restitution, no objection was made and any error in developing the amount was waived. But, objection was made when the Assistant District Attorney inquired as to the number of bad checks Baldwin had written, and we conclude the trial court erred in overruling the objection and requiring the Appellant to answer that he had written somewhere around forty to forty-five bad checks. Nevertheless, we conclude, as the court did in *Jordan v. State,* 576 S.W.2d 825 (Tex.Cr.App.1978),

that this evidence did not contribute to the conviction of the Appellant for the offense of forgery by passing. The evidence was certainly sufficient to establish that Baldwin had stolen several blank checks from Robert Benton and that Benton did not sign this check which Baldwin presented for payment just prior to his arrest.

■ But, we must, as the court did in *Jordan v. State,* supra, determine whether the evidence which was erroneously admitted was harmless in regard to punishment. We reach the same results as the court did in the Jordan case and conclude that we are unable to say that this error was harmless beyond a reasonable doubt on the issue of punishment. We reach that conclusion primarily because the last statement made by the court prior to sentencing James Baldwin to the maximum confinement of ten years for this offense said:

> Court's going to base the judgment on the evidence I heard from the witness stand, from the defendant's own testimony he had written some forty-five checks. That was the testimony.

Although we normally would conclude that the trial court did not consider any improperly admitted evidence in reaching a decision in the case, we may not do so in this case where the court expressly stated that such inadmissible evidence was to be the basis upon which he would pass sentence. Ground of Error No. Three is sustained insofar as the sentence phase of the case is concerned, and the judgment of conviction is affirmed but the sentencing is reversed and the case remanded to the district court for an additional hearing and new sentence. Such sentencing should be by another District Judge and in accordance with the procedures set forth in *Tamminen v. State,* 644 S.W.2d 209 (Tex.App.—San Antonio 1982), rev'd in part and aff'd in part, 653 S.W.2d 799 (Tex.Crim.App.1983).